

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ELIZABETH COX, | ) |
| Plaintiff, | ) Civil Action No.: 05 C 4814 |
| v. | ) Suzanne B. Conlon, Judge |
| PRIME FINANCIAL MORTGAGE CORPORATION and EDUARDO ZEPEDA, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Elizabeth Cox brings a two-count complaint against Prime Financial Mortgage Corporation and Eduardo Zepeda for wrongful termination. She claims that defendants terminated her because she was Caucasian, in violation of 42 U.S.C. § 1981 (Count I), and that they retaliated against her for objecting to their discriminatory hiring policy, in violation of Illinois public policy (Count II). Defendants move for summary judgment. For the reasons set forth below, the motion is denied.

### BACKGROUND

The following facts are undisputed unless otherwise noted.[1] Zepeda was Prime Financial's chief executive officer and principal. Defs. Facts at ¶ 5. Cox began working as a loan officer in November 2003. *Id.* at ¶ 9. Two months later, she was promoted to branch manager. *Id.* at ¶ 11. She was responsible for managing production and recruiting, training, and supervising 30-plus loan officers and employees. Pl. Facts at ¶ 4. She was terminated on May 20, 2005. *Id.* at ¶ 78. This case arises from a dispute over whether she was terminated because her performance was

---

[1] The facts are derived from Defendants' Statement of Undisputed Facts ("Defs. Facts") and Plaintiff's Local Rule 56.1(b)(3)(B) Statement ("Pl. Facts").

substandard or because she was Caucasian and refused to implement Zepeda's alleged discriminatory hiring policy.

**I.      Performance**

Cox claims she was an effective, hardworking manager. *Id.* at ¶¶ 39, 47. She frequently left the office around 8:30 p.m. Pl. Ex. 8 (Ruiz Dep.) at 13:14-16. She regularly received bonuses for achieving production goals. Pl. Ex. 2 (Zepeda Dep.) at 152:6-17. In January 2005, she was nominated for the manager of the year award by the Illinois Association of Mortgage Bankers. Pl. Ex. 26 (nomination notice) at 1.

Zepeda claims he verbally reprimanded Cox on several occasions between February and April 2005. Defs. Ex. A (Zepeda Aff.) at ¶¶ 8-13. The reprimands, documented in four "Work History" forms, involved ineffective communication, tardiness, and drinking alcohol in the office. *Id.* Cox claims Zepeda and his cousin, Adriana Hellem, falsified these forms. Hellem was human resources manager. Pl. Facts at ¶ 122. Zepeda and Hellem signed two forms in January 2005 purportedly documenting reprimands that took place in April 2005. Defs. Ex. A-4 at 1, A-5 at 1. Hellem testified that although the employee handbook did not provide for "Work History" forms, she invented them for Cox. Pl. Ex. 3 (Hellem Dep.) at 141:15-142:22. Employees were usually given an opportunity to comment on their disciplinary notices. *Id.* at 20:11-24. But Hellem did not give the "Work History" forms to Cox for comments. *Id.* at 145:24-146:6.

Cox took issue with defendants' favoring of Hispanic employees. She expressed concerns to management over the lack of support for non-Hispanic loan officers. Defs. Ex. 2 (Cox Dep.) at 217:14-19. She complained to Zepeda about the lack of advertising in non-Hispanic markets. *Id.* at 216:9-14.

## II. Termination

On April 15, 2005, Zepeda reprimanded Cox for taking a prolonged lunch break. Defs. Ex. A-4 at 1. Three days later, they met again on the matter. Defs. Ex. A-5 at 1. Feeling upset, Cox initially resigned, but then withdrew her resignation. *Id.* Zepeda agreed to keep her. *Id.* At an industry event on May 5, 2005, Cox and Zepeda met Melissa Motino of First American Bank. Pl. Ex. 12 (Motino Aff.) at ¶ 8. Motino expressed an interest in hiring Cox. *Id.* Zepeda told Motino that Cox would work for him forever. *Id.*

On May 19, 2005, Cox and Carlos Calzadilla, Prime Financial's new recruiter, attended an industry event in Arlington Park. Pl. Ex. 1 (Cox Aff.) at ¶¶ 60-61. On their way home, Cox and Calzadilla discussed recruiting individuals from the event. *Id.* at ¶¶ 62-64. What they discussed is in dispute. According to Cox, Calzadilla stated that Zepeda instructed him to recruit only Hispanics. *Id.* at ¶ 65. Cox responded that she opposed the Hispanic-only hiring policy and that she would speak to Zepeda about her opposition. *Id.* Calzadilla did not recall their conversation. Pl. Ex. 5 (Calzadilla Dep.) at 88:15-19, 90:6-24. He also denied Zepeda told him to only recruit Hispanics. *Id.* at 90:11-16. At the time, Calzadilla had daily contact with Zepeda and shadowed him in recruiting interviews. *Id.* at 89:14-23, 90:2-5, 96:23-97:7. According to Calzadilla and Zepeda, however, they had no contact between the Arlington Park event and 7:00 p.m. on May 20, 2005, and Calzadilla never spoke with Zepeda about the event or Cox's view on hiring policies. Defs. Facts at ¶ 21. Zepeda also denies any knowledge of Cox's opposition to hiring policies. Defs. Ex. A (Zepeda Aff.) at ¶ 14.

On May 20, 2005, Zepeda and Hellem went to Cox's office and told her she was terminated. Pl. Ex. 1 (Cox Aff.) at ¶¶ 66-67. Upon Hellem's request, Cox signed a termination notice stating

she was terminated due to substandard performance. *Id.* But she did not read the notice because she was upset. *Id.* at ¶¶ 70, 72. Cox and Zepeda dispute the substance of their conversation during the termination meeting. Cox claims Zepeda stated that he wanted to take Prime Financial in a more Hispanic direction and that Cox was not capable of doing that. *Id.* at ¶ 67. Zepeda denies making these statements. Defs. Ex. 1 (Zepeda Dep.) at 305:11-19.

### III. Human Resources Practices

To demonstrate defendants favored Hispanics and Latinos, Cox proffers evidence about Prime Financial's hiring irregularities. Mark Franke, a Latino, received a $5,000 raise for taking Cox's position. Pl. Facts at ¶ 105. He received another $5,000 raise within a month. *Id.* Franke allegedly had fewer qualifications and responsibilities than Cox. *Id.* at ¶¶ 108, 117. After Cox's termination, Prime Financial hired approximately 18 loan officers; all were either Hispanic or Latino. *Id.* at ¶¶ 92-93, 97-98.

To cast doubt on the authenticity of the "Work History" forms, Cox proffers evidence showing Hellem's questionable record-keeping. Hellem's testimony and documents suggest that she might have created new-hire forms months after employees had begun working and that her inspection of immigration documents was less than prudent. *Id.* at ¶¶ 150-67.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is proper when the moving papers and affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "The moving party has the initial burden of demonstrating that it is entitled to summary judgment." *Kramer v. Vill. of N. Fond*

*du Lac*, 384 F.3d 856, 861 (7th Cir. 2004). Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the nonmoving party. *See Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 771 (7th Cir. 2002). A genuine issue of material fact exists when the evidence is sufficient to support a reasonable jury verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## II. Count I

### A. At-Will Employee

Defendants contend Cox has no cause of action under 42 U.S.C. § 1981 because she was an at-will employee. They rely on *Gonzalez v. Ingersoll Milling Machine Co.*, 133 F.3d 1025 (7th Cir. 1998), in which the Court of Appeals questioned the applicability of § 1981 in discriminatory termination cases. But the discussion in *Gonzalez* is *dicta*. *Id.* at 1034 (stating the court "need not determine" the issue). In a later case, the Court of Appeals refused to follow *Gonzalez* and extended § 1981 protection to at-will employees claiming discrimination in promotion and pay. *Walker v. Abbott Labs.*, 340 F.3d 471, 477-78 (7th Cir. 2003). Given *Walker*, at-will employment termination falls under the purview of contractual rights protected by § 1981. *Id.*; *accord Swearingen-El v. Cook County Sheriff's Dept.*, No. 05 C 1493, 2006 WL 123781, at *3 (N.D. Ill. Jan. 12, 2006) (Bucklo, J.) (an at-will employee may sue for discriminatory termination under § 1981); *Humphries v. CBOCS West, Inc.*, 392 F. Supp. 2d 1047, 1050 n.1 (N.D. Ill. 2005) (Kocoras, C.J.) (same); *Spielman v. Fisher Printing, Inc.*, No. 02 C 7454, 2003 WL 1090360, at *1 (N.D. Ill. Mar. 10, 2003) (Plunkett, J.) (same). Accordingly, Cox's discriminatory termination claim stands.

## B. *Prima Facie* Case

Where, as here, direct evidence of discrimination is absent, a § 1981 plaintiff must abide by the formula set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973), for proving discrimination by indirect evidence. *Hague v. Thompson Distrib. Co.*, 436 F.3d 816, 821-22 (7th Cir. 2006) (applying Title VII analysis to a § 1981 claim). Cox must first establish a *prima facie* case of racial discrimination. *McDonnell Douglas*, 411 U.S. at 802. Once she does so, the burden shifts to defendants to show a legitimate reason for terminating her. *Id.* If defendants make this showing, the burden shifts again to Cox to demonstrate that defendants' proffered reason is pretextual, and ultimately that their real reason for termination is discriminatory. *Pilditch v. Bd. of Educ.*, 3 F.3d 1113, 1116 (7th Cir. 1993). In a reverse discrimination case, Cox must also demonstrate "background circumstances" giving rise to an inference that defendants have a reason or inclination to discriminate invidiously against whites. *Mills v. Health Care Serv. Corp.*, 171 F.3d 450, 455-57 (7th Cir. 1999).

Defendants argue Cox has failed to establish a *prima facie* case of discrimination. Relying on *Rogers v. City of Chicago*, 320 F.3d 748 (7th Cir. 2003), they insist Cox must demonstrate similarly situated Hispanic employees were not terminated. In *Rogers*, female police officers sued for retaliation resulting from their complaints of sexual harassment. *Id.* at 750-51. Similarly situated police officers were presumed to exist. But unlike the Chicago Police Department, defendants employ a small work force and only a few branch managers like Cox. *See* Defs. Ex. A (Zepeda Aff.) at ¶ 15 (since Cox's termination, Prime Financial hired only three new branch managers). *Rogers* therefore cannot "be applied rigidly" to this case. *Pilditch*, 3 F.3d at 1116.

In *Pilditch*, a high school principal sued for reverse discrimination after termination. *Id.* at 1115. The Court of Appeals held plaintiff could establish a *prima facie* case by proving that: (1) his performance met the employer's legitimate expectations; (2) he was qualified for the job; and (3) the employer found a replacement of a different race. *Id.*; *cf. Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996) (in a conventional case, plaintiff must show that (1) he is a member of a racial minority; (2) defendants had an intent to discriminate; and (3) the discrimination involved an activity protected by § 1981). *Pilditch* provides an apt adaptation of the *McDonnell Douglas prima facie* case to the unique circumstances in reverse discrimination cases.

Under *Pilditch*, Cox sufficiently establishes a *prima facie* case of discriminatory termination. The evidence shows she met production goals and received regular bonuses, as well as an award nomination. *See* Pl. Ex. 2 (Zepeda Dep.) at 152:6-17, Ex. 26 (nomination notice) at 1. Her qualifications were supported not only by her employment record, but also by Motino's interest in hiring her. Pl. Ex. 12 (Motino Aff.) at ¶ 8. Cox's replacement, Franke, was Latino. Pl. Facts at ¶ 102. Accordingly, all three *Pilditch* elements are met. Moreover, Cox can establish the "background circumstances" required under *Mills*. She testified Prime Financial committed few resources to advertising in non-Hispanic markets or to supporting non-Hispanic employees. Defs. Ex. 2 (Cox Dep.) at 216:9-14, 217:14-19. All loan officers hired after her termination were either Hispanic or Latino. Pl. Facts at ¶¶ 92-93, 97-98. The evidence gives rise to a reasonable inference of favoritism towards Hispanics and therefore satisfies the "background circumstances" requirement. *See Mills*, 171 F.3d at 457 (requirement is satisfied even though the proof was "far from actual evidence of discrimination"); *see also Perry v. Cmty. Action Servs.*, 82 F. Supp. 2d 892, 895 (N.D. Ill. 2000) (termination of a Caucasian employee is suspect if the decision-makers were all African-American and plaintiff was replaced by an African-American with considerably less experience).

7

## C. Pretext

Defendants have established a legitimate, nondiscriminatory reason for terminating Cox. They proffer four "Work History" forms showing her deficiencies. Defs. Ex. A-2-5. They argue she signed the termination notice stating her termination was based on substandard performance. *Id.* A-6. Under the *McDonnell Douglas* burden-shifting scheme, Cox must raise an issue of material fact as to whether defendants' explanation is pretextual and whether discrimination is the true reason. *Mills v. First Fed. Sav. & Loan Ass'n*, 83 F.3d 833, 845 (7th Cir. 1996) (plaintiff must "specifically refute the facts which allegedly support the employer's proffered reasons"). She may do so by showing: (1) defendants' explanation has no basis in fact; (2) the explanation is insufficient to warrant the adverse employment action; or (3) the explanation is not the real reason. *Id.*

Under all three methods, issues of material fact exist regarding defendants' proffered reason for Cox's termination. Viewed in the light most favorable to Cox, the evidence shows Hellem and Zepeda manufactured the "Work History" forms. Pl. Ex. 3 (Hellem Dep.) at 141:15-142:22. Hellem failed to follow Prime Financial's procedure in processing disciplinary notices; two forms were generated before the purported reprimands took place. *Id.*; Defs. Exs. A4 at 1, A-5 at 1. Cox signed the termination notice under distress, Pl. Ex. 1 (Cox Aff.) at ¶¶ 70, 72. Thus, "a jury could believe that [Cox] merely perfunctorily signed the [termination notice], and did not affirmatively characterize her [termination as for cause]." *Bond v. Sheahan*, 152 F. Supp. 2d 1055, 1071 (N.D. Ill. 2001). Two weeks before terminating Cox, Zepeda told Motino that he wanted Cox to work for him forever. Pl. Ex. 12 (Motino Aff.) at ¶ 8. In addition, circumstantial evidence supports Cox's assertion that Zepeda wanted to hire only Hispanics and Latinos. Franke, a Latino, took over Cox's position and received two raises in a month. Pl. Facts at ¶ 105. All 18 loan officers Prime hired after Cox's termination were either Hispanic or Latino. *Id.* at ¶¶ 92-93, 97-98. The evidence gives rise

to a reasonable inference that defendants' proffered reason is mere pretext and that discrimination is the true reason for Cox's termination. Summary judgment on the § 1981 claim must be denied.

## III. Count II

### A. Elements

Cox claims defendants violated Illinois public policy by retaliating against her for opposing a discriminatory hiring policy. At the outset, defendants argue Cox has abandoned this claim by analyzing the claim under the Title VII framework. This argument is baseless. On a summary judgment motion, the court may apply a Title VII analysis to a retaliation claim under Illinois common law. *McEwen v. Delta Air Lines, Inc.*, 919 F.2d 58, 60 (7th Cir. 1990). In fact, the *McDonnell Douglas* burden-shifting scheme works to defendants' advantage. *See id.* at 59 (observing that a *prima facie* case of retaliation may sufficiently defeat a motion for summary judgment in Illinois courts).

Under Illinois law, Cox must establish that she was "(1) discharged; (2) in retaliation for her activities; and (3) that the discharge violates a clear mandate of public policy." *Zimmerman v. Buchheit of Sparta, Inc.*, 645 N.E.2d 877, 880 (Ill. 1994). Defendants argue that they have proven a legitimate reason for Cox's termination and that Cox has failed to establish causation. As discussed above, issues of material fact exist as to whether defendants' proffered reason is mere pretext. Thus, their first argument fails.

### B. Causation

To show causation, Cox must offer circumstantial evidence supporting a reasonable inference that Zepeda knew of her opposition to the alleged Hispanic-only hiring policy. *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1458 (7th Cir. 1994). She meets this burden. Calzadilla testified that

9

around the time of Cox's termination, he had daily contact with Zepeda, shadowing Zepeda in recruiting interviews. Pl. Ex. 5 (Calzadilla Dep.) at 89:14-23, 90:2-5, 96:23-97:7. Cox posits that circumstantial evidence supports Calzadilla conveyed to Zepeda her opposition to the alleged discriminatory policy between May 19 and May 20, 2005. Defendants attack this inference on two fronts. First, they assert Calzadilla denied any knowledge of Cox's opposition. But whether Cox told Calzadilla about her opposition to the alleged discriminatory policy is a factual issue. Determination of the reasonableness of this inference based on circumstantial evidence falls within the jury's province. *See Cameron v. Frances Slocum Bank & Trust Co.*, 824 F.2d 570, 575 (7th Cir. 1987).

Defendants next argue that even if Cox told Calzadilla about her opposition, Calzadilla had no contact with Zepeda after the Arlington Park event and before Cox's termination. Whether Calzadilla told Zepeda of Cox's opposition is a matter within Calzadilla and Zepeda's exclusive knowledge. "When evidence bearing on a particular matter lies within the exclusive possession of the party seeking summary judgment," the court "must be quite circumspect in evaluating the movant's factual averments." *Dey*, 28 F.3d at 1459 n. 12. Heightened circumspection is warranted here because there is additional circumstantial evidence supporting an inference that Cox's termination was retaliatory. The close temporal proximity between Cox's termination and her purported expression of opposition to discrimination suggests a causal link between the two for purposes of establishing a *prima facie* case. *See McClendon v. Ind. Sugars, Inc.*, 108 F.3d 789, 796 (7th Cir. 1997) ("a closely related sequence of events is sufficient to present a *prima facie* case"). Temporal proximity, by itself, may be insufficient to establish *prima facie* causation. *See Foster v. Arthur Andersen, LLP*, 168 F.3d 1029, 1034 (7th Cir. 1999). But temporal proximity does not stand

alone here. Zepeda told Cox in the termination meeting that she could not help him take Prime Financial in a more Hispanic direction. Pl. Ex. 1 (Cox Aff.) at ¶ 67. Coupled with temporal proximity, Zepeda's purported statements give rise to an inference that Zepeda knew of Cox's opposition to the alleged discriminatory policy. Accordingly, summary judgment is inappropriate on Count II.

IV. **Miscellaneous Issues**

Defendants argue Cox has failed to establish a claim based on intentional interference with contract in Count I. As Cox correctly observes, this argument is incomprehensible. Count I is a federal claim based on 42 U.S.C. § 1981. Cox's use of the phrase "intentional interference" in her complaint does not convert her federal statutory claim into a common law claim.

Defendants assume Cox claims retaliatory discharge under 42 U.S.C. § 1981. This assumption is misplaced. Section 1981 "encompasses only racial discrimination on account of the plaintiff's race and does not include a prohibition against retaliation for opposing racial discrimination." *Hart v. Transit Mgmt of Racine, Inc.*, 426 F.3d 863, 866 (7th Cir. 2005).

## CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment is denied.

ENTER:

Suzanne B. Conlon
United States District Judge

March 20, 2006